# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**EDUARDO DEL RIO GORDO**,
    Plaintiff,

v.

**HOSPITAL RYDER MEMORIAL INC.**, *et al.*,
    Defendants.

Civil No. 13–1145 (BJM)

## OPINION AND ORDER

Eduardo Del Rio Gordo ("Del Rio") brought this action against Sonia Rosa-Sanchez ("Rosa"), Hospital Ryder Memorial, Inc., Ryder Home for the Elderly, and Ryder Management Services, Inc. (collectively, "Ryder"), alleging violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 701 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. Laws Ann. tit. 31, § 5141. Docket No. 104. On January 17, 2018, Del Rio, representing himself, presented his evidence before me at a non-jury trial. Docket No. 187. Ryder then moved for judgment on partial findings under Federal Rule of Civil Procedure 52(c), and Del Rio opposed. Docket No. 187. Rosa also sought to dismiss the causes of action against her for insufficient process under Federal Rules of Civil Procedure 4(m). Docket No. 189. This case is before me on consent of the parties. Docket No. 158.

Ryder sought judgment on all three of Del Rio's causes of action. Under Federal Rule of Civil Procedure 52(c), "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." *See Moulton v. Bane*, No. 14-CV-265-JD, 2016 WL 1091093, at *4 (D.N.H. Mar. 21, 2016) ("A motion made at the close of the evidence in a jury-waived trial, asserting that the plaintiff's evidence is insufficient to sustain a claim, is governed by Federal Rule of Civil Procedure 52(c) and is known as a motion for judgment on partial findings."). Through

drawing "reasonable inferences and mak[ing] credibility determinations," *Diaz Aviation Corp. v. Airport Aviation Servs., Inc.*, 716 F.3d 256, 263 (1st Cir. 2013), the court must make findings of fact and conclusions of law in support of its decision. Fed. R. Civ. P. 52(c).

"The Fair Housing Amendments Act of 1988 makes it unlawful to discriminate against 'any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling' on the basis of that person's handicap." *Trovato v. City of Manchester, N.H.*, 992 F. Supp. 493, 497 (D.N.H. 1997) (quoting 42 U.S.C.A. § 3604(f)(2)). "The [FHA] contemplates three types of claims for perceived discrimination: 'disparate treatment, disparate impact, and failure to make reasonable accommodations.'" *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 66 (1st Cir. 2010) (quoting *Smith & Lee Assocs. v. City of Taylor, Mich.,* 102 F.3d 781, 790 (6th Cir. 1996)). Discrimination can also include "a failure to design and construct [a covered multifamily dwelling] in such a manner that the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons." 42 U.S.C.A. § 3604(f)(3)(C). When assessing a FHA claim, courts may also look to "authority under the Americans with Disabilities Act" as "generally persuasive." *Astralis*, 620 F.3d at 66.

The parties stipulated that Del Rio is handicapped within the meaning of the FHA and ADA. Docket No. 175. In his testimony, Del Rio stated that he had lived at Ryder Home for the Elderly for seventeen years. He also asserted that he is or had been the president of the committee of residents at the home and that he advocated on their behalf to Ryder because the residents had experienced a lot of problems. Furthermore, Del Rio stated that Ryder now sought to evict him because he had been trying to solve things.

Del Rio also called two witnesses, Jose R. Feliciano Sepulveda and Rosa. Rosa testified that Ryder had parking for residents from 2000 to 2011 but that it did not have parking spaces for disabled residents in those years. Feliciano also testified that Ryder did not have parking spaces for disabled residents from 2000-2011 although they do now. Rosa testified that she sent Del Rio

letters telling him that he had to move his van from the parking space it was in at Ryder because it was in a disabled parking spot designated for visitors.[1]

Considering whether Del Rio has sustained a claim under each avenue for relief under the FHA in turn, the court will begin with disparate treatment. For a claim of disparate treatment, Del Rio must show that an "invidious discriminatory purpose was a motivating factor" behind Ryder's failure to have handicapped parking available for residents. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). "The court analyzes whether a discriminatory purpose motivated the defendant by examining the events leading up to the challenged decision and the legislative history behind it, the defendant's departure from normal procedures or substantive conclusions, and the historical background of the decision and whether it creates a disparate impact." *Ave. 6E Investments, LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 504 (9th Cir. 2016). As Del Rio did not present any direct evidence of discriminatory intent, the court applies the burden shifting framework under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973). *See Mussallihattillah v. McGinnis*, 684 F. App'x 43, 46–47 (2d Cir. 2017) (applying *McDonnell Douglas* burden-shifting framework when entering judgment on a Title VII case under Fed. R. Civ. P. 52(c)); *Chase v. United States Postal Serv.*, 149 F. Supp. 3d 195, 206 (D. Mass.), aff'd, 843 F.3d 553 (1st Cir. 2016) (applying *McDonnell Douglas* burden-shifting framework when entering judgment on an FMLA case under Fed. R. Civ. P. 52(c)); *Pina v. Town of Plympton,* 529 F. Supp. 2d 151, 155–56 (D. Mass. 2007) ("When a plaintiff offers no direct evidence of discrimination, his claim of discrimination under the FHA is to be examined under the burden-shifting framework of *McDonnell Douglas,* established in Title VII cases.") (internal citation omitted). Under the *McDonnell Douglas* framework, the plaintiff must make an initial prima facie showing of unlawful discrimination, which is a "'small showing,' 'not onerous' and 'easily made.'" *PSI, LLC v. Nautilus Ins. Co.*, No. 12-CV-12073, 2014 WL 7409578, at *3 (D. Mass. Dec. 30, 2014) (quoting *Kosereis v. Rhode Island,* 331 F.3d 207, 213 (1st Cir. 2003)).

---

[1] It is unclear from the testimony when these letters were sent.

Although it is not a high bar, Del Rio did not present enough evidence to make a prima facie showing of disparate treatment. It is stipulated that his handicap makes him a member of a protected class under the FHA. However, Del Rio provided none of the evidence that courts look for to find an invidious purpose, including evidence of the events leading up to Ryder's decision not to have handicapped parking for residents; whether it is normal for homes for the elderly to have handicapped parking for residents; and whether Ryder's decision had any impact on the handicapped residents. Consequently, the court cannot find that Ryder's lack of handicapped parking for residents was disparate treatment as there is no evidence of discriminatory animus or intent.

Del Rio's second possible theory is Ryder's practices had a disparate impact on handicapped persons. "[D]isparate impact cases are the result of policies or practices that are not necessarily intended to discriminate but in fact have a disproportionately adverse effect on a protected class." *Rhode Island Comm'n for Human Rights v. Graul*, 120 F. Supp. 3d 110, 122–23 (D.R.I. 2015). "In order to make out a prima facie case under a disparate impact theory, a plaintiff must show '(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'" *Lowe v. Planning & Zoning Comm'n of the Town of Mansfield*, No. 3:16-CV-381, 2018 WL 379010, at *6 (D. Conn. Jan. 10, 2018) (quoting *Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016); see *Graul*, 120 F. Supp. 3d at 123 ("The elements . . . are (a) membership in a protected group; (b) a denial of a housing benefit; (c) the causal relationship between the denial and a facially neutral policy (i.e., the disparate impact); and (d) that the benefit remained available or was given to a non-member of the group.").

Here, Del Rio has not established a claim under a disparate impact theory. While it is stipulated that he is a member of a protected group, he did not argue or set forth any evidence showing that he was denied a housing benefit. Del Rio did present evidence that there was no resident parking specifically designated for people with handicaps, but he did not present evidence

that he, as a handicapped person, could not use the normal parking available for residents. Therefore, there is no evidence that he was denied a housing benefit.

Furthermore, Del Rio cannot establish a claim under the FHA for failure to grant a reasonable accommodation. Under the FHA, it is unlawful to refuse to make reasonable accommodations in "rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped person] equal opportunity to use and enjoy a dwelling." 42 U.S.C.A. § 3604(f)(3)(B). Courts have found that "parking is clearly a 'service or facility in connection with' their property affecting their use and enjoyment thereof and is covered by the Act." *Trovato*, 992 F. Supp. at 497 (citing *Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328, 333–335 (2nd Cir. 1995)). Nonetheless, as Del Rio never submitted evidence that he asked Ryder to create handicap parking for residents or even to enact any changes, he cannot establish a claim for discrimination based on a failure to grant an accommodation. *See Astralis*, 620 F.3d at 67 ("[T]he claimant must show that he requested a particular accommodation that is both reasonable and necessary to allow him an equal opportunity to use and enjoy the housing in question.").

Lastly, in analyzing the FHA's provision for designing buildings to be handicap accessible, parking areas do qualify as a "common use" area under the FHA as it is "shared by two or more individuals." *United States v. Edward Rose & Sons*, 384 F.3d 258, 262–63 (6th Cir. 2004) ("[T]he stair landing in front of the entrance is a common area that the statute mandates be accessible. The fact that two apartment units share the stair landing makes the space a common area. . . . At the time of the statute's enactment, dictionaries generally defined 'common' as belonging to or shared by two or more individuals."). However, Del Rio did not present evidence showing that "the public use and common use portions of" Ryder Home for the Elderly are not "readily accessible to and usable by handicapped persons." Although he identified a common use area—the parking lot— Del Rio never argued that it was not accessible to and usable by handicapped persons. While the court can certainly hypothesize that a failure to have handicapped parking spaces for residents would make the parking lot unusable by handicapped persons, it is not the role of the court to create arguments when a party has failed to do so. Moreover, Del Rio did not show that Ryder

Home for the Elderly is a multifamily dwelling, meaning a "building[] consisting of 4 or more units if such buildings have one or more elevators; and ground floor units in other buildings consisting of 4 or more units," because he presented no evidence that it includes four or more units. *Nat'l Fair Hous. All., Inc. v. Hunt Investments, LLC*, No. 3:14-CV-716, 2015 WL 4362864, at *4 (E.D. Va. July 14, 2015) (quoting 42 U.S.C. § 3604(f)(7)(A)-(B)).

In his first cause of action, Del Rio argued that the lack of handicapped parking for residents also violated Section 504. Section 504 "prohibits discrimination 'under any program or activity receiving [F]ederal financial assistance' against any otherwise qualified individual with a disability, solely because of his disability." *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363 (8th Cir. 2003) (quoting 29 U.S.C. § 794(a)). It appears from the Second Amended Complaint that Del Rio's basis for the alleged violation of Section 504 is that he was discriminated against and retaliated against. With no direct evidence of either discrimination or retaliation, the court again must use the three-part burden shifting test from *McDonnell Douglas*, which begins by requiring the plaintiff to make a prima facie case of either discrimination or retaliation. *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir. 2000). A retaliation claim requires "(1) plaintiff engaged in statutorily protected activity; (2) defendant took adverse action against plaintiff; and (3) causal connection exists between adverse action and protected activity. *Neudecker*, 351 F.3d at 364 (citing *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1025 (8th Cir.1999)). Here, even if the court assumes that Del Rio's work on behalf of the other residents was a statutorily protected activity, there is no evidence that Ryder took any adverse action against him. In the Second Amended Complaint, Del Rio suggested that he was subjected to retaliatory parking notifications and notices threatening eviction, but no such evidence was presented at trial. Similarly, Del Rio presented no evidence that he was discriminated against as he did not point to any actions that Ryder took against him.

Del Rio's second cause of action is under the ADA. While it is questionable whether the ADA applies in this case, it is unnecessary for me to explore that issue as I already concluded that Del Rio did not present any evidence that could substantiate a discrimination claim under the Rehabilitation Act, which for these purposes prohibits the same unlawful actions as the ADA. *See*

*Sutton v. Freedom Square Ltd.*, No. 07-14897, 2008 WL 4601372, at *6–7 (E.D. Mich. Oct. 15, 2008), *aff'd sub nom. Sutton v. Piper*, 344 F. App'x 101 (6th Cir. 2009) ("The ADA only regulates non-residential facilities[,]" so residential condominiums, apartments, and their assigned parking "are not 'public accommodations'" protected by the ADA); *see also Crevier* v. *Town of Spencer*, 600 F. Supp. 2d 242, 264 (D. Mass. 2008) ("[T]he case law construing the [ADA and the Rehabilitation Act] . . . is essentially interchangeable.").

Del Rio's final cause of action is under Article 1802. Article 1802 of the Puerto Rico Civil Code states that "[a] person who by an act or omission causes damages to another through fault or negligence shall be obliged to repair the damage done." P.R. Laws Ann. tit. 31, § 5141. Under Puerto Rico law, the elements of negligence are (1) an injury, (2) a breach of duty, and (3) proximate causation. *Vásquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007). During trial, Del Rio did not present any evidence of an injury that he suffered, let alone one caused by Ryder's breach of duty. Without having alleged an injury, Del Rio cannot sustain a claim for either purposeful or negligent infliction of harm by Ryder.

Rosas's motion to dismiss based on insufficient process is also granted. At trial, Rosa's attorney stated that she had never been served with process although the complaint had been filed in this case considerably over ninety days prior. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). Del Rio asserted that he had served process, and I ordered that Del Rio present the receipt from the process server to the court by the following day, January 18, 2018. However, six days later, Del Rio still has not presented evidence that Rosa was ever served. Therefore, Rosa's motion to dismiss based on insufficient process must be granted as well.

## CONCLUSION

During the trial, Del Rio did not present enough evidence to sustain any of his three causes of action. He also did not serve Rosa with sufficient process. For the foregoing reasons, Ryder's motion for partial judgment on the findings is **GRANTED**, and Del Rio's claims against Ryder and Rosa are **DISMISSED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of January 2018.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge